Swing, J.;
Ferris, J., and Hoeeheimer, J., concur.
Error to special term.
Defendants in error, Rudolph Kleybolte & Company, partners, commenced two actions in the court below, the first on a promissory note of the Cincinnati, Hamilton & Dayton Railway Company, for $20,000; the second on a note of same company for $20,355.52. No answer was filed by the railway company in either ease, denying the obligation, but in each ease a cross-petition was filed by the railway company pleading a set-off. The facts alleged by way of set-off are substantially as follows, to-wit:
That- the Cincinnati, Hamilton & Dayton Railway Company, a corporation under the laws of Ohio, on or about July 7, 1904, owned 3,500. bonds, each in the amount of $1,7)00, payable to bearer, July .1, 1954, bearing 4y2 per cent, interest, and secured by a mortgage to the Cincinnati Trust Company of St. Louis, and that one of the obligors in said bonds was the Toledo Railway & Terminal Company, a corporation under the laws of Ohio; that on said day the Cincinnati, Hamilton & Dayton Railway Company and another corporation known as the Peré Marquette Railroad Company, did jointly and severally guarantee the payment of the principal and interest of said bonds as the same shall become due; and that thereafter, in consideration of the guaranty, Rudolph Kleybolte and Leopold Kleybolte, partners under the firm name of Rudolph Kleybolte & Company, did, by contract made in the state of Ohio with the Cincinnati, Hamilton & Dayton Railway Company, buy from said company 2,500 of said bonds at and for the price of $970 and accrued interest for each bond; and did at said time buy from said company 800 more of said bonds at the price of $975 and accrued interest for each of said bonds; that said prices were less than the par value of the bonds; that said bonds were delivered to Kleybolte & Company by the Cincinnati, Hamilton & Dayton Railway Company, with the guaranty of that com *538 pany on each of those bonds, and that said Kleybolte & Company-did afterwards sell all of said bonds for value to innocent purchasers, by whom same are now owned; that at the time of said purchase of said bonds by Kleybolte & Company, said Rudolph. Kleybolte, a member of said firm, was also a director of the Cincinnati, Hamilton & Dayton Railway Company, and that by reason of his being a member of said firm and also a director of said company, and his having purchased said bonds at less than their par value, the said Kleybolte & Company, partners, became accountable to the Cincinnati, Hamilton & Dayton Railway Company for the difference between the par value of said bonds and the price at which they purchased the same, to-wit,, accountable for the sum of $95,000 with interest at 6 per cent, from July 7, 1904; and said sum of $95,000 and interest is pleaded as a set-off against the said claims of Kleybolte & Company in said suits, and judgment is asked against Kleybolte & Company for the difference between the amount of the set-off and the claims of Kleybolte & Company.
It is not alleged that Kleybolte & Company purchased the bonds, guaranteed as they were, for less than their actual value, or that Kleybolte & Company realized any profit by their subsequent sales of the bonds. A demurrer to the cross-petition was filed in each case, which was sustained by the court below and judgment was rendered for the plaintiff below in each case.
The claim of the railway company is based upon Rev. Stat, 3313, which is as follows, to-wit: ,
“All capital stock, bonds, notes or other securities of a company, purchased of the company by a director thereof, either directly or indirectly, for less than the par value thereof, shall be null and void.”
It is claimed by counsel for plaintiff in error that the intent and effect of this act, which is a part of the railway legislation of this state, is to prohibit a purchase by a director of a railway company of any of the securities of the company for less, than their par value, and in this case that the said bonds owned by the company and guaranteed by it and sold with such guaranty upon them were securities of the company within the meaning of the a?t, or at any rate that the guaranty itself of the *539 company upon the bonds sold, creating a liability of the company, was a security of the company within the meaning of the act.
It is also claimed by the company that it may either treat its obligation as guarantor as void, or regard it as only voidable, and may, instead of treating itL as void, hold the purchasers, Kleybolte & Company, liable for the difference between the amount paid for the bonds and their par value, as upon an implied contract to pay par,' the claim being that the said director of the company, a member of the firm of Kleybolte & Company, having purchased the bonds at less than par, in disregard and violation of the prohibition of the statute, was guilty of a tort, and that the law implies a contract, in such ease, to pay the full par value of the bonds.
On the other hand, it is claimed by Kleybolte & Company that the said section of the statutes is not an absolute prohibition so as to render the whole transaction void at the option of the company; that a director may purchase securities of the company, but if he shall purchase such securities at less than par, he simply can not realize upon them; that they are mill and void in his hands; that he can neither enforce payment of the securities by the company nor compel the company to return to him the money paid by him for the securities; that the securities become invalid by the terms of the statute; that while he suffers that loss, and takes that chance when he purchases the securities, he can not be compelled by the company to make his invalid securities valid by the payment of more money; that the company may keep the money he has paid and be under no obligation to pay the securities so purchased and held by him; but that a contract can not be implied by which he shall be bound to pay more than he agreed to pay and did pay; that he may choose to lose what he paid for the securities which are null and void, but can not be held to pay more than he agreed to pay for them.
It is also claimed by defendants in error that the said guaranteed bonds purchased by them were not securities of the Cincinnati, Hamilton & Dayton Kailway Company within the meaning of the statute and that, therefore, the statute does not apply.
Harmon, Colsion, Goldsmith c& Hoadly, for plaintiff in error.
Peck, Shaffer & Peek, for defendant in error.
Assuming that the guaranty upon the bonds made them securities of the Cincinnati, Hamilton & Dayton Railway Company, or that its guaranty was itself a security of the company, we are of the opinion, upon careful consideration, that the statute can have no other effect and was not intended by the Legislature to have any other -effect than that which is plainly and fully stated by the words used, to-wit: to make “null and void” in the hands of the purchasing director “securities purchased” by him -at less than their par value. The company may sell to him and take his money, and he may take the securities, and the company may keep the money paid, and he can not compel payment of the securities by the company. The provision is, that the “securities” which he has purchased, and for which he has paid less than par, “shall be null and void'.” The statute does not say in terms that the purchase shall be void, or that the whole transaction shall be void, but that “the securities purchased” shall be void. We do not feel warranted in giving to the act any meaning or effect beyond what is clearly expressed by the words used.
As to the question whether the guaranty of the Cincinnati, Hamilton & Dayton Railway Company upon the bonds was a security of the company, within the meaning of the statute, we incline to the opinion that it was, just as its own separate obligation, note or bond would be, but whether our view as to that be correct or not, the effect in this case of the provision of the statute, that the securities purchased by a director for less than par shall be null and void, as we construe the language of the act, is to defeat the claims set up in the cross-petitions.
It is not necessary, in the view we take of the case, to determine any other of the questions raised or suggested by counsel in argument.
The judgment of the court below is affirmed in each case.